Opinion issued February 28, 2008




     









In The
Court of Appeals
For The
First District of Texas




NO. 01–05–00940–CV




SCOTT BADER, INC., AMY C. WRIGHT, KERN & WOOLEY, L.L.P.,
AND NATIONAL PIGMENTS & CHEMICALS, INC., Appellants

V.

SANDSTONE PRODUCTS, INC., Appellee




On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2000–27864A




* * *




NO. 01–06–00593–CV




SCOTT BADER, INC. AND NATIONAL PIGMENTS & CHEMICALS,
INC., Appellants

V.

SANDSTONE PRODUCTS, INC., Appellee




On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2000–27864




DISSENTING OPINION

          I respectfully dissent. I would hold that the sanctions assessed against Scott
Bader were well within the discretion of the trial court and that there is no
requirement that the trial court explain its rejection of lesser sanctions when, as here,
the trial court’s order detailed the offending party’s abuses and directly tailored
sanctions specifically authorized by Rule 215 of the Texas Rules of Civil Procedure
to cure the prejudice to the innocent party caused by the abuse. I would affirm the
judgment of the trial court. 
The Test for Just Sanctions
          The Texas Supreme Court has set out a two-part test for determining whether
sanctions are just and therefore within the discretion of the trial court. 
TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991). That
test requires that there be “a direct relationship . . . between the offensive conduct and
the sanction imposed,” i.e., that the sanction be “directed against the abuse and
toward remedying the prejudice caused by the innocent party” and that the sanctions
not be “excessive.” Id. at 917. In regard to the second prong, the court is required
to consider the availability of less stringent sanctions and whether such lesser
sanctions would fully provide compliance. Id. These standards set the bounds within
which the trial court is to exercise its discretion to assess sanctions under Texas Rule
of Civil Procedure 215 governing discovery abuse. Id. That test has been
subsequently reaffirmed in Spohn Hospital v. Mayer, 104 S.W.3d 878, 882 (Tex.
2003) (citing TransAmerican, 811 S.W.2d at 917) and Cire v. Cummings, 134 S.W.3d
835, 839 (Tex. 2004). 
The Trial Court’s Sanctions Order
          The trial court’s carefully articulated sanctions order in this case is set out in
the majority opinion. That court made explicit findings that Scott Bader had
“knowingly and in flagrant bad faith engaged in discovery abuse,” including (1)
“withholding critical responsive documents until the production of more than 8,000
pages of documents on March 1, 2005, after the depositions in the lawsuit had already
taken place”; (2) “producing documents in a manner calculated to conceal
information (through removing the key first page of a document and marking out
information in other documents), with conflicting and inadequate explanations for the
same that lack credibility ”; (3) “presenting deposition witnesses with such critical
documents and information concealed or not produced”; (4) “failing to name Terry
Strickland as a witness with knowledge of relevant facts, or to produce responsive
documents, related to Strickland’s role as director of Defendant SCOTT BADER, his
role as the “main lead” in Defendant SCOTT BADER’s transition from using Co-Defendant Goodrich[’s] services to those of Co-Defendant Para-Chem, his direct
supervision over specific issues regarding the formulation and testing of Defendant’s
product, and his direct involvement in specific issues related to customer reports of
problems”; (5) “failing to produce as a corporate representative a witness with
knowledge as requested”; and (6) “filing two no-evidence motions for summary
judgment on December 10, 2004 and February 23, 2005, respectively, when
Defendant SCOTT BADER and its counsel knew that the production of documents
and witnesses was deficient.” 
          The trial court found that Scott Bader’s “actions were calculated to conceal
evidence that would indicate . . . that [its] product did not meet its stated
specifications; and . . . that the stated specifications were modified.” It further found
that Scott Bader’s actions “indicate a pattern or history of bad faith discovery abuse,
demonstrate callous disregard for the responsibilities of discovery under the rules,
and significantly interfere with the integrity and core judicial functions of this Court
and its rulings.” For all of these reasons, the trial court found Scott Bader had
prejudiced Sandstone’s ability to present its case, and it concluded that a sanctions
order “directly related to the offensive conduct . . . is appropriate and necessary
because a lesser sanction will not promote compliance.”
          The trial court sanctioned this behavior by requiring that the jury be instructed
 
“You are to presume (1) that the product that was shipped
between mid-1999 and 2001 did not meet the specifications
Scott Bader provided to Sandstone, and (2) that the
specifications that Scott Bader provided to Sandstone for
the product during mid-1999 and 2001 were modified.”

The trial court ordered that Scott Bader and its indemnitee, NPCI, were not permitted
to rebut the factual presumptions set forth above, and it struck affirmative defenses
addressed to the issue. The court also ruled that Scott Bader could not use Terry
Strickland as a witness at trial and that Scott Bader “may not use the deposition
testimony of any witness from a deposition unless SCOTT BADER first demonstrates
to the Court that such deposition was taken after full production of documents.” The
trial court then identified eight witnesses who were deposed before Scott Bader’s
“production of critical documents on March 1, 2005.” Finally, the trial court ordered
that Scott Bader pay $68,000 in sanctions for attorney’s fees and expenses incurred
by Sandstone attributable to Scott Bader’s discovery abuse. The case then proceeded
to a full trial in which Scott Bader was allowed to defend itself, with the foregoing
limitations, and Sandstone was required to prove its case, including proving that its
damages resulted from Scott Bader’s actions.
          Additional misconduct by Sandstone’s counsel during trial resulted in the
declaration of a mistrial and the necessity of beginning again. The sanctions order
at issue in this appeal was issued during the second trial, after a hearing outside the
presence of the jury, to clarify what was to be taken as established due to Scott
Bader’s misconduct and what Sandstone was required to prove. Scott Bader was
permitted to “bring forward evidence that does not rely on any stricken deposition to
establish causation for failures other than an affirmative defense of Plaintiff’s
conduct.” The trial court made clear, however, that Scott Bader’s affirmative
defenses and its general denial were stricken to the extent of precluding litigation of
issues rebutting the established issues and that Scott Bader was “not entitled to raise
quality control issues about Sandstone to negate evidence that the product was out of
specification before reaching Sandstone.” 
          When the case was presented to the jury in the retrial, the jury was instructed
that (1) “the specifications that Scott Bader provided to Sandstone for the product
during mid-1999 and 2001 were modified”; (2) “[t]he product that was shipped
between mid-1999 and 2001 did not meet the specifications Scott Bader provided to
Sandstone”; (3) “[s]uch modification of the specifications is a breach of the sales
contract between Scott Bader and Sandstone”; and (4) “[s]uch modification is a
breach of the warranty from Scott Bader to Sandstone.” The first jury question
following the binding instructions asked the jury, “What sum of money, if any, if paid
now in cash, would fairly and reasonably compensate Sandstone Products, Inc. for its
damages, if any, that resulted from modification of specifications and failure to meet
specifications as instructed?” The jury was instructed to consider as elements of
damages solely “[t]he reasonable and necessary cost of the repair or replacement of
the failed roof coatings”; Sandstone’s past lost profits; litigation costs associated with
Sandstone’s liability to its customers; application fees seeking Dade County, Florida
approval for coating material; and costs of property and material testing for roof
coating.
Sanctions Available Under Rule 215
          Among the sanctions expressly made available to the trial court under Rule 215
of the Texas Rules of Civil Procedure, governing discovery abuse, are
(1) an order disallowing any further discovery of any kind or of a
particular kind by the disobedient party;
 
(2) an order charging all or any portion of the expenses of discovery or
taxable court costs or both against the disobedient party or the attorney
advising him;
 
(3) an order that the matters regarding which the order was made or any
other designated facts shall be taken to be established for the purposes
of the action in accordance with the claim of the party obtaining the
order;
 
(4) an order refusing to allow the disobedient party to support or oppose
designated claims or defense, or prohibiting him from introducing
designated matters in evidence;
 
(5) an order striking out pleadings or parts thereof, or . . . dismissing
with or without prejudice the action or proceedings or any part thereof,
or rendering a judgment by default against the disobedient party;
 
Tex. R. Civ. P. 215.2(b). The rule further provides:
 
(8) In lieu of any of the foregoing orders or in addition thereto, the court
shall require the party failing to obey the order or the attorney advising
him, or both, to pay, at such time as ordered by the court, the reasonable
expenses, including attorney fees, caused by the failure, unless the court
finds that the failure was substantially justified or that other
circumstances make an award of expenses unjust.

Id.
Application of the Test of Abuse of Discretion in Assessing Sanctions 
          Here, the trial court carefully articulated in its oral and written sanctions
orders—issued after notice and hearing—the justification of each of its narrowly
tailored sanctions. Each sanction was chosen from one expressly permitted by Rule
215.2 to address exactly the behavior the trial court found to have been committed by
Scott Bader. There is no evidence in the record that Scott Bader did not do exactly
what the trial court found it did do, and the majority acknowledges as much. There
is no question that Scott Bader’s actions constituted severe discovery abuse designed
to keep Sandstone from presenting its case. The trial court first entered sanctions
directed specifically at prohibiting Scott Bader from profiting from its concealment
of documents and of a key witness in the first trial. Nevertheless, Scott Bader
continued its misconduct during trial, and a mistrial was declared, so that everyone
had to start over. During the second trial, after a hearing outside the presence of the
jury, the court issued the written sanctions order at issue on appeal, clarifying its
specifically targeted sanctions against Scott Bader, and it instructed the jury
accordingly. At no point did the trial court enter “death penalty” sanctions that would
have prevented Scott Bader from presenting any defense at all. Sandstone was still
obliged to prove its case and its damages. 
          I would hold that the trial court fully satisfied the first prong of the test for the
just impositions of sanctions articulated by the supreme court in TransAmerican,
namely, the requirement that there be “a direct nexus among the conduct, the
offender, and the sanction imposed.” See Spohn Hosp., 104 S.W.3d at 882. 
          The majority, however, does not even discuss the trial court’s satisfaction of
the first prong of the TransAmerican test. Instead, it turns directly to the second
prong, which “mandates that the trial court consider less stringent measures before
settling on severe sanctions.” Id. at 883. Ignoring the trial court’s targeting of
sanctions to address ongoing misconduct and its explanation in the sanctions order
for each of the sanctions imposed, the majority finds “conclusory” the trial court’s
conclusion that it had “considered the possibility of all lesser available options” but
“[u]nder these circumstances, . . . no lesser sanctions are available to address and
deter Defendant SCOTT BADER’s conduct while preserving SANDSTONE’s
rights.” Bader, Wright, Kern & Wooley, L.LP. and National Pigments & Chemicals,
Inc. v. Sandstone Products, Inc., No. 01-05-00940-CV, slip op. at 22 (Tex.
App.—Houston [1st Dist.] Feb. 28, 2008, no pet. h.). The majority holds that the trial
court abused its discretion because this conclusion was “unsupported,” and, in a
footnote, it offers its own suggestions for sanctions the trial court might have
considered. Bader, slip op. at 22.
          In my view, the majority misconstrues the controlling language it quotes from
Cire, 134 S.W.3d at 842, and it directly contravenes the holding in Cire, which is
controlling authority. I would find Cire to be on all fours with this case with the sole
exception that the trial court in Cire levied death penalty sanctions for flagrant
discovery abuse, while the trial court in this case did not. 
          In Cire, the plaintiff refused to produce audiotapes critical to the proof of her
case against the defendant and then deliberately destroyed them after being thrice
ordered to produce them. See id. at 841. The supreme court observed,
Because the audiotapes sought by Cire would have either proved or
disproved Cummings’s claims, her destruction of them justifies a
presumption they would have done the latter. On this record, it was
within the trial court’s discretion to determine that Cummings
deliberately destroyed dispositive evidence; thus, death penalty
sanctions are warranted in this exceptional case. As we explained in
TransAmerican, discovery sanctions can be used to adjudicate the merits
of a party’s claims when a party’s hindrance of the discovery process
justifies a presumption that its claims lack merit. 
Id. at 841 (citing TransAmerican, 811 S.W.2d at 918). In sum, the supreme court in
Cire approved death penalty sanctions for behavior virtually identical to that of Scott
Bader in this case. Yet in this case, unlike Cire, no death penalty sanctions were
imposed.
          The appellate court’s error in reversing the trial court’s sanctions order in Cire,
as described by the supreme court, was exactly the same as the error made by the
majority in this case. The supreme court observed in Cire that the court of appeals
had held that “the trial court abused its discretion when it failed to consider
alternative, lesser sanctions and when it did not explain why lesser sanctions would
not suffice.” Id. The supreme court continued, “The court of appeals also said that
the trial court could have and should have considered other, lesser sanctions before
it imposed death penalty sanctions,” but “[the court of appeals] suggested a less
stringent sanction: a spoliation instruction to the jury directing it to assume the
missing audiotapes would have been unfavorable to Cummings” and it concluded that
the trial court erred by refusing to consider lesser sanctions. Id. The supreme court
granted the petition for review in Cire specifically “to consider the issue of death
penalty sanctions and to examine whether a trial court’s sanctions order must recite
why every conceivable sanction would be ineffective in securing compliance and
curing prejudice before striking pleadings.” Id. at 838. 
          In reversing the court of appeals, the supreme court held that, in an exceptional
case, like that in Cire, even death penalty sanctions may be issued without imposing
lesser sanctions so long as the trial court “considers” lesser sanctions. Id. The court
explained: 
Under this standard, the trial court need not test the effectiveness of each
available lesser sanction by actually imposing the lesser sanction on the
party before issuing the death penalty; rather, the trial court must
analyze the available sanctions and offer a reasoned explanation as to
the appropriateness of the sanction imposed.

Id. at 840. 
          The trial court in this case did exactly what Cire and TransAmerican require. 
It tailored sanctions directly to the abuses perpetuated by Scott Bader and it explained
why these sanctions were necessary to cure the specific prejudice to Sandstone caused
by each of Scott Bader’s abuse. Nevertheless, like the court of appeals in Cire, the
majority in this case would require the trial court’s sanctions order to “recite why
every conceivable sanction would be ineffective in securing compliance and curing
prejudice” before it would allow the court to the issue targeted sanctions that would
impede Scott Bader’s presentation of its case on the issues on which it abused
discovery. See id. at 838. Because I believe the majority opinion directly
contravenes controlling authority, interferes with the jurisdiction of the trial court,
and has the effect of rewarding severe discovery abuse with a retrial without the
hindrance of sanctions that were fully within the discretion of the trial court to
impose, I must dissent. 
          I would affirm the judgment of the trial court. 
 
 
 
                                                                        Evelyn V. Keyes
                                                                        Justice

Panel consists of Justices Nuchia, Keyes, and Higley.

Justice Keyes, dissenting.